**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**FRANKLIN ROSALES RAMIREZ,**

**Petitioner,**

**v.** **Case No. 2:26cv690**

**NEY HIDALGO, *et al.*,**

**Respondents.**

## REPORT AND RECOMMENDATION

Pending before the Court is an Amended Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Amended Petition"), ECF No. 13, Petitioner's Motion to Appoint Counsel, ECF No. 2, and Petitioner's Motion for Non-Transfer Order, ECF No. 3. Respondents oppose granting the Amended Petition. ECF No. 14. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the foregoing reasons, the undersigned **RECOMMENDS** that the Amended Petition, ECF No. 13, be **GRANTED**, and that Petitioner be immediately released from custody. The undersigned further **RECOMMENDS** that the Motion to Appoint Counsel and Motion for Non-Transfer Order, ECF Nos. 2–3, be **DENIED** and **DISMISSED AS MOOT**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Franklin Rosales Ramirez ("Petitioner") is a native and citizen of El Salvador who is currently detained pursuant to 8 U.S.C. § 1231 at Caroline Detention Center.[1] ECF No. 12,

---

[1] The factual assertions recited here are taken from the Declaration of Justin Richardson, Acting Assistant Field Office Director with Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"). ECF No. 12, attach. 2.

attach. 2 at ¶¶ 3, 5. On March 28, 2018, Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") encountered Petitioner at the Fairfax County Jail following his arrest for Assault on a Family Member, in violation of Virginia Code § 18.2-57.2. *Id.* ¶ 6. After confirming Petitioner's identity and immigration history, ERO lodged a detainer. *Id.*

On May 1, 2018, ERO took Petitioner into civil immigration custody following his release from local custody. *Id.* ¶ 7. ERO served Petitioner with a Form I-200, Warrant for Arrest of Alien, and a Notice to Appear ("NTA"), charging him with being inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without having been admitted or paroled, or who arrived in the United States at a time or place other than that designated by the Attorney General. *Id.* On June 14, 2018, Petitioner filed a Form I-589, Application for Asylum and Withholding of Removal, with the Immigration Court. *Id.* ¶ 8. On October 25, 2018, Petitioner appeared for an individual hearing before an Immigration Judge ("IJ") in Arlington, Virginia. *Id.* ¶ 9. Following the hearing, the IJ ordered Petitioner removed from the United States but granted him withholding of removal to El Salvador. *Id.* Neither party appealed the IJ's decision. *Id.*

On February 9, 2019, Petitioner was released from civil immigration custody on an Order of Supervision ("OSUP"). *Id.* ¶ 10. On June 12, 2026, Petitioner reported to the ERO Baltimore field office for a scheduled appointment. *Id.* ¶ 11. After confirming Petitioner's identity and immigration history, ERO took Petitioner into civil immigration custody pending removal to a third country. *Id.* Respondents assert that Petitioner was issued a Notice of Revocation of Release and given an informal interview to respond to the reasons for revocation of his release but that "ERO was unable to obtain a copy of the served Notice of Revocation of Release and thus, unable

to confirm whether Petitioner was properly served."[2] *Id.* ¶ 11 n.1. ERO served Petitioner with a Notice of Removal to Mexico. *Id.* ¶ 11. Petitioner expressed fear of removal to Mexico and was referred to U.S. Citizenship and Immigration Services ("USCIS") for a third-country fear screening. *Id.*

On July 10, 2026, USCIS determined that Petitioner had not established that he was more likely than not to face persecution or torture in Mexico. *Id.* ¶ 12. On August 4, 2026, ERO served Petitioner with the Notice of Revocation of Release to perfect service. *Id.* ¶ 13.

Respondents represent that, due to the pending habeas petition and the Court's resulting Order to Show Cause, ICE has paused its removal efforts. *Id.* ¶ 14. Respondents further represent that, absent the pending habeas petition, "ICE would be able to immediately thereafter transfer Petitioner to Southwest Border facility and present [him] to Mexico for acceptance." *Id.*

On July 8, 2026, the Court filed Petitioner's first habeas petition, which alleged that Respondents violated Petitioner's substantive due process rights, procedural due process rights, the Administrative Procedure Act ("APA"), and the *Accardi* doctrine in connection with his detention and the revocation of OSUP. ECF No. 1 at 6–8, 14–22. Also on July 8, 2026, Petitioner filed a Motion to Appoint Counsel and a Motion for a Non-Transfer Order. ECF Nos. 2–3. On July 22, 2026, the Court issued an Order barring Petitioner's removal or transfer from this District and ordering that Respondents file an answer to the petition. ECF No. 6 at 1. On July 31, 2026, Petitioner's counsel entered a Notice of Appearance, and the Court granted additional counsel's motion to appear pro hac vice on August 3, 2026. ECF Nos. 7, 10.

---

[2] The parties dispute whether ERO conducted an informal interview for Petitioner to respond to the reasons for revocation of his release. *See* ECF No. 14 at 2 ("Petitioner received notice of such revocation and an informal interview to respond to the revocation."); ECF No. 15 at 5–6 (". . . [T]o date, Petitioner has not received an informal interview to respond to the reasons for revocation, let alone an informal interview with access to counsel."). The Court addresses this dispute *infra* Section II.D.

On August 5, 2026, Respondents filed their Opposition to the petition, along with the Department of Homeland Security's ("DHS") March 30, 2025, guidance establishing procedures for removing aliens with final removal orders to third countries ("March Guidance"); the Declaration of Justin Richardson, Acting Assistant Field Office Director with ICE, ERO; the October 25, 2018, order of the IJ granting Petitioner withholding of removal; Petitioner's Form I-213, Record of Deportable/Inadmissible Alien; Petitioner's "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)" form; Petitioner's Notice of Removal; Petitioner's Third Country Screening Notice; and Petitioner's Notice of Revocation of Release. ECF No. 12; ECF No. 12, attachs. 1–8. Respondents assert that the revocation of Petitioner's OSUP was consistent with the regulatory requirements, Petitioner's detention is not unlawful under 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001), this Court lacks jurisdiction to review the merits of Petitioner's claims regarding his removal to a third country, and, even if this Court had jurisdiction, Petitioner received the process he was due regarding his fear of removal to Mexico. ECF No. 12 at 8–31.

On August 6, 2026, Petitioner filed the Amended Petition, raising the following claims for relief:

> COUNT I: VIOLATION OF 8 U.S.C. § 1231(a)(6) – Indefinite Detention
>
> [. . .]
>
> COUNT II: VIOLATION OF FIFTH AMENDMENT'S DUE PROCESS CLAUSE – Third Country Removal
>
> [. . .]
>
> COUNT III: ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A); DEVIATION FROM REGULATIONS 8 C.F.R. § 241.4
>
> [. . .]

COUNT IV: VIOLATION OF FIFTH AMENDMENT'S DUE PROCESS CLAUSE – Revocation of Release and Redetention Without Sufficient Process

ECF No. 13 at 23–25. Petitioner's requests include a writ of habeas corpus; declarations that his detention violates § 1231(a), the Fifth Amendment, and the APA; his immediate release subject to his prior conditions of supervision; and injunctive relief barring his removal or re-detention absent specified procedural safeguards and a showing of changed circumstances. *Id.* at 25–26.

On August 19, 2026, Respondents filed a Supplemental Opposition, asserting that this Court may not review Petitioner's APA claim and the revocation of Petitioner's OSUP satisfied procedural due process under the Fifth Amendment. ECF No. 14 at 2. Petitioner filed his reply on September 2, 2026, asserting that this Court has jurisdiction to review Petitioner's APA claim and the revocation of Petitioner's OSUP was unlawful because Petitioner never received an informal interview, as required by the Immigration and Nationality Act's ("INA") implementing regulations. ECF No. 15 at 1–7. Petitioner also maintains that his removal remains not reasonably foreseeable because Respondents have not demonstrated that Mexico is likely to accept Petitioner for removal and Petitioner has not received the process he is entitled to regarding his fear of removal to a third country. *Id.* at 7–11.

Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va.

Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

### A. The Court Possesses Jurisdiction to Review Petitioner's Third-Country Removal Claim but Not His APA Claim.

#### *1. Petitioner's Third-Country Removal Claim*

Respondents argue that this Court lacks jurisdiction over Petitioner's third-country removal claim for two reasons. First, they contend that the relief Petitioner seeks—IJ review of his negative third-country screening determination or enjoining his removal pending such review—is not cognizable in habeas because it does not challenge the legality or conditions of his current detention and instead seeks an opportunity to remain in the United States. ECF No. 12 at 14. Relying on *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), Respondents maintain that such collateral challenges fall outside the traditional scope of habeas. *See id.* at 17 ("The Supreme Court did not narrow the scope of its *Thuraissigiam* decision to expedited removal; rather, it clarified that the scope of habeas review simply does not extend to claims seeking

collateral review without an accompanying attack on the legality or conditions of the detention itself.").

Second, Respondents argue that Congress independently stripped district courts of jurisdiction to review DHS's third-country removal procedures through the INA. *Id.* at 19–21. Respondents contend that 8 U.S.C. § 1252(g), which applies "notwithstanding any other provision of law," including § 2241 and other habeas provisions, bars any claim arising from the decision or action to execute a removal order. *Id.* at 19–20. Because Petitioner seeks to prevent DHS from executing his removal order pending further review of his third-country screening determination, Respondents assert that his claims fall squarely within § 1252(g)'s jurisdictional bar, which courts have held encompasses discretionary decisions concerning whether and when to execute a removal order. *Id.* at 20.

Finally, Respondents argue that Petitioner cannot circumvent this jurisdictional bar by invoking the APA, because § 1252(g) expressly forecloses review "notwithstanding any other provision of law," including statutory and nonstatutory causes of action. *Id.* at 18. Thus, Respondents maintain that neither § 2241 nor the APA provides a basis for this Court to enjoin execution of his removal order. *Id.* at 19; ECF No. 14 at 3–4.

The Court rejects Respondents' argument that it lacks jurisdiction to review Petitioner's third-country removal claim. Respondents contend that Petitioner's requested relief—review of his negative third-country screening determination by an IJ or an injunction preventing his removal pending such review—is not cognizable in habeas because it would not affect the lawfulness of his detention and would merely delay his removal. ECF No. 12 at 14–18. But, as Petitioner notes, this Court retains jurisdiction to review his third-country removal claim because he challenges the adequacy of the process received rather than the discretionary decision to execute his removal

order. *See* ECF No. 15 at 2. Petitioner does not challenge the merits of his removal order; rather, he challenges the process he received and the process that Respondents intend to employ in executing that order, specifically whether they may remove him to a third country following a negative fear determination without providing an opportunity for IJ review. *See* ECF No. 13 at 24 ("Petitioner has a final grant of withholding of removal to El Salvador. Should DHS seek to remove Petitioner to a third country like Mexico, due process requires that he be able to seek IJ review of any negative third-country screening.").

Nor does 8 U.S.C. § 1252(g) deprive the Court of jurisdiction. Although § 1252(g) bars review of claims "arising from" the decision or action to "commence proceedings, adjudicate cases, or execute removal orders," Petitioner does not ask the Court to review the discretionary decision to execute his removal order. Courts in this District have likewise exercised jurisdiction over substantially similar challenges to third-country removal procedures. *See, e.g.*, *Serpas v. Simon*, No. 1:25-CV-02369, 2026 WL 1244544 (E.D. Va. Feb. 3, 2026) (holding that petitioner's third-country removal to Mexico was not reasonably foreseeable, revocation of his OSUP was deficient, and petitioner was entitled to IJ review of his negative fear-of-removal determination); *Rivas Rojas v. Noem*, No. 1:25-cv-1624, Dkt. No. 18, Order (E.D. Va. Nov. 17, 2025) (finding jurisdiction over the petitioner's claims regarding, in part, the denial of petitioner's right to IJ review of a negative fear-of-removal determination); *Benitez Pineda v. Noem*, No. 1:25-cv-2337, Dkt. No. 17, Order (holding that Respondents violated 8 C.F.R. § 241.4(*l*) in revoking Petitioner's OSUP and finding that petitioner is entitled to IJ review of his negative fear-of-removal determination). As in those cases, Petitioner challenges whether Respondents may execute his removal order without providing the process he alleges is required. Accordingly, the Court has jurisdiction to adjudicate Count II of the Amended Petition.

*2. Petitioner's APA Claim*

Respondents additionally argue that this Court lacks jurisdiction to review Count III of the Amended Petition, which invokes the APA. ECF No. 12 at 18. Respondents argue that the jurisdiction-stripping language of § 1252(g) bars habeas review of an APA claim because it expressly forecloses review "notwithstanding any other provision of law," including statutory and non-statutory causes of action. *Id.*; ECF No. 14 at 3–4. Petitioner argues that Respondents are incorrect, and that other courts outside this District have found that "APA and habeas review may coexist." ECF No. 15 at 3 (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185 (D.D.C. 2015)).

Count III of the Amended Petition alleges that ICE violated the APA and the *Accardi* doctrine by failing to provide Petitioner with the procedures required for revocation of his OSUP under 8 C.F.R. §§ 241.13(i)(3) and 241.4(l). ECF No. 13 at 24–25. The Court agrees that it lacks jurisdiction to review Count III to the extent that it asserts a standalone claim under the APA. Judicial review of agency action under the APA is available only where "there is no other adequate remedy in a court." *Bacardi & Co. v. United States PTO*, 104 F.4th 527, 534 (4th Cir. 2024) (quoting 5 U.S.C. § 704). Courts have held that an individual challenging the legality of their immigration detention may not obtain relief under the APA given the availability of an "adequate remedy" under 28 U.S.C. § 2241. *See, e.g.*, *Quispe v. Blanche*, No. CV 26-817, 2026 WL 2253663, at *3 (D. Md. Aug. 5, 2026) (concluding that a petition for a writ of habeas corpus is an adequate remedy precluding relief under the APA) (citing cases).

Here, Petitioner's adequate remedy is a writ of habeas corpus under 28 U.S.C. § 2241, which can provide the very "immediate release" from custody Petitioner seeks in Count III and which falls "within the historic core of habeas[.]" *See Thuraissigiam*, 591 U.S. at 123. And, as Respondents contend, § 1252(g)'s jurisdiction-stripping provision applies "[n]otwithstanding any

other provision of law," including statutory causes of action such as the APA. 8 U.S.C. § 1252(g). Accordingly, the Court does not have jurisdiction to review Count III as an APA claim.

Count III, however, also expressly alleges that Respondents violated the *Accardi* doctrine by failing to comply with the procedures governing revocation of Petitioner's release. Because the Amended Petition invokes both the APA and the *Accardi* doctrine, the Court construes Count III as asserting that Respondents' alleged failure to comply with their own regulations renders Petitioner's detention unlawful and will consider that claim in the context of Petitioner's § 2241 petition. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954) (considering, in a habeas proceeding, whether immigration officials failed to comply with their own regulations); *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999) (explaining that "an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" under the *Accardi* doctrine); *Ciciliano v. Guadian*, No. 1:26-CV-559, 2026 WL 1703590, at *3 (E.D. Va. June 11, 2026) (granting habeas relief in part because "the revocation of Petitioner's order of supervision does not comport with agency regulations and thus violates due process independently and as a matter of the *Accardi* doctrine").

**B. Petitioner is Entitled to IJ Review of a Negative Fear Determination.**

Count II of the Amended Petition alleges that Respondents violated Petitioner's procedural due process rights by attempting to remove him to Mexico without the opportunity for an IJ to review his negative third-country fear screening regarding his claimed fear of persecution or harm in Mexico. ECF No. 13 at 24. Respondents contend that IJ review is not required under the INA or its implementing regulations, and that a weighing of the factors set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), favors not providing IJ review. ECF No. 12 at 21–26, 28–31. Respondents

further argue that Petitioner received all the process that is required through notice of his intended removal to Mexico, a third-country fear interview before a USCIS asylum officer resulting in a negative determination, and the procedures set forth in the March Guidance, which they argue satisfy due process under governing Supreme Court and Fourth Circuit precedent. *Id.* at 26–28. The Court disagrees.

Petitioner is entitled to IJ review of any negative fear determination as a matter of procedural due process. As this Court has previously found, a decision by a single asylum officer in a third country screening, rather than the opportunity for review by an IJ, is insufficient to protect Petitioner's due process rights. *See Torres v. Rosa*, No. 2:26CV245, 2026 WL 1839065, at *8–11 (E.D. Va. May 29, 2026), *report and recommendation adopted*, No. 2:26CV245, 2026 WL 1836457 (E.D. Va. June 25, 2026). In determining what procedures due process requires, courts balance three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The INA authorizes removal to several categories of countries, including the alien's country of citizenship, birth, residence, or another country willing to accept the individual if removal to the primary countries is impracticable, inadvisable, or impossible. 8 U.S.C. § 1231(b). The Secretary of Homeland Security also retains discretion to remove an alien to any country identified under the statute. 8 C.F.R. § 241.15(a). On March 30, 2025, DHS issued its March Guidance establishing procedures for removing aliens with final removal orders to third countries. ECF No. 12, attach. 1. Under the March Guidance, before removing an alien to a third country

not previously designated for removal, DHS must determine whether the United States has received credible "diplomatic assurances" that the individual will not be persecuted or tortured. *Id.* at 2. If such assurances exist, then DHS removes the alien "without the need for further procedures." *Id.* at 3. If, however, no such assurances exist, then DHS informs the alien of the intended removal, and only if the alien "affirmatively states a fear of removal" will USCIS conduct a screening within twenty-four hours to determine whether the alien is more likely than not to face persecution or torture. *Id.* If USCIS finds no such risk, the alien will be removed, but if USCIS does find such a risk, then the matter may be referred for further immigration proceedings or ICE may "choose to designate another country for removal." *Id.*

Certain aliens are entitled to credible fear or reasonable fear screenings under 8 C.F.R. §§ 208.30 and 208.31. However, the parties here do not argue that Petitioner is entitled to a credible fear screening under these provisions. Nor does the Court conclude that Petitioner falls within the categories of aliens expressly covered by the reasonable-fear procedures in § 208.31. Accordingly, Respondents are correct that no statute or regulation expressly provides for IJ review of a negative third-country fear determination for an alien in Petitioner's position. But the absence of an express statutory or regulatory right to IJ review does not end the inquiry. The question before the Court is not whether the INA or its implementing regulations independently mandate such review, but whether the procedures provided by Respondents satisfy the requirements of the Fifth Amendment. See *Mathews*, 424 U.S. at 334–35.

Nonetheless, Petitioner contends—and the Court agrees—that he is entitled to IJ review of the asylum officer's negative fear determination. Application of the *Mathews* factors weighs in favor of requiring these additional procedural protections. First, Petitioner has a substantial interest in avoiding removal to a country where he may face persecution, torture, or other serious

harm. An IJ previously granted Petitioner withholding of removal to El Salvador on October 25, 2018, establishing that he is entitled to protection from removal to that country. Although the Court is not aware of what the precise basis for that protection was, Petitioner asserts that "[h]e fled El Salvador after gangs persecuted him." ECF No. 13 at ¶ 15. This prior grant of withholding demonstrates that Petitioner has a significant interest in avoiding removal to a country from which he has been afforded protection. That interest is not diminished just because Respondents seek to remove Petitioner to Mexico rather than directly to El Salvador, particularly where Petitioner has expressed a fear of removal to Mexico. Courts within the Fourth Circuit have repeatedly recognized that such an interest in not being removed to a third country where persecution is likely is "precisely the type of interest" warranting meaningful procedural safeguards before removal. *Serpas*, 2026 WL 1244544, at *7 (quoting *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 549 (D. Md. 2025)); *see Mendoza Palacios v. Mullin*, No. 26-CV-648, 2026 WL 933319, at *6 (D. Md. Apr. 7, 2026) ("That is precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding of removal under § 1231(b)(3)(A) or the Convention Against Torture receive such protection."). Accordingly, the first *Mathews* factor weighs in Petitioner's favor.

The second factor—the risk of erroneous deprivation and the value of additional safeguards—likewise supports Petitioner. Respondents emphasize that Petitioner received notice of the proposed removal and an opportunity to present his fear to a USCIS asylum officer, and the Court does not disagree that those procedures—if they occurred—provide some measure of process. But the relevant question under *Mathews* is whether those procedures sufficiently reduce the risk of an erroneous deprivation, or whether an additional safeguard has sufficient value to be constitutionally required.

Unlike other immigration proceedings involving fear-based claims where a negative fear determination may be reviewed by an IJ, Petitioner here was afforded no IJ review of the asylum officer's determination. *See* 8 C.F.R. §§ 208.31(g), 1208.31(g) (providing for IJ review of negative fear determinations in proceedings where an alien faces reinstatement of a removal order). The absence of such review significantly increases the risk of erroneous deprivation, particularly where the consequences of removal may be severe and irreversible. *See, e.g.*, *Mendoza Palacios*, 2026 WL 933319, at *7 ("[W]here a person alleges that she would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."); *Cruz Medina*, 806 F. Supp. 3d at 549 ("[A] single review by an asylum officer creates an unacceptably high risk of erroneous deprivation."); *A.A.M. v. Andrews*, 815 F. Supp. 3d 1124, 1138 (E.D. Cal. 2025) ("If an immigration judge does not review USCIS's determination, including the evidence Petitioner provided, Petitioner will not have the opportunity to present his fear-based claim to a neutral adjudicator for correction of USCIS's potentially erroneous determination. And should Petitioner be erroneously removed to Cameroon, there would be no avenue for him to vindicate his rights in the United States."). Thus, although the asylum officer's screening gave Petitioner an initial opportunity to be heard, it does not provide the independent review necessary to meaningfully guard against an erroneous determination.

Finally, the third *Mathews* factor also favors Petitioner because the additional procedure requested—IJ review of the asylum officer's negative fear determination—imposes only a limited burden on Respondents. As previously discussed, IJ review of negative fear determinations already exists in analogous immigration proceedings, including reinstatement and expedited removal contexts, and courts have recognized that such review is not unduly burdensome. *See, e.g.*, *Tomas-Ramos v. Garland*, 24 F.4th 973, 978 (4th Cir. 2022) (finding that a "reasonable fear

review hearing" before an IJ "is not as comprehensive or in-depth as a withholding of removal hearing," but is instead "a review of the [ ] asylum officer's decision" (citation and internal quotation marks omitted)); *Sagastizado*, 802 F. Supp. 3d at 1012 ("Requiring IJ review in Petitioner's case provides significant but minimally burdensome procedural safeguards in the form of independent review by a subject-matter expert and the opportunity to receive a written explanation of a denial by an IJ.").

Moreover, requiring IJ review would impose only a minimal burden on Respondents' interest in promptly executing removal orders, particularly given that such review already exists in analogous immigration proceedings and is ordinarily conducted within ten days of any negative fear determination. *See* 8 C.F.R. § 1208.31(g) ("In the absence of exceptional circumstances, such review shall be conducted by the immigration judge within 10 days of the filing of the Form I-863, Notice of Referral to Immigration Judge, and the complete record of determination with the immigration court."); *Sagastizado*, 802 F. Supp. 3d at 1013 (recognizing that the Government has a "significant interest in the prompt execution of removal orders," but that limited IJ review of a negative fear determination imposes only a "minimal delay" in the removal process and serves the public interest in "preventing aliens from being wrongfully removed" (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009))).

Respondents' reliance on the March Guidance does not change this conclusion. *See* ECF No. 12 at 27–28. Courts that have considered this issue have repeatedly concluded that the lack of IJ review raises serious due process concerns and, in some instances, renders the March Guidance unconstitutional. *See, e.g.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212, 2026 WL 2797801, at *17 (1st Cir. Sept. 18, 2026) (". . . [T]he [March] Guidance conflicts with the statutory and regulatory provisions governing fear-of-torture claims insofar as it authorizes third-

country removals without effective notice and a meaningful opportunity to assert such claims in connection with such removals. The [March] Guidance is therefore unlawful under the APA."); *Faragalla v. Crawford*, No. 3:26-CV-63, 2026 WL 541132, at *7 (E.D. Va. Feb. 26, 2026) ("Respondent argues that all the process [petitioner] would be owed in such a circumstance is set out in the March Guidance and summarized in the eight-step process discussed *supra*. . . . But district courts within the United States Court of Appeals for the Fourth Circuit and across the country have found that the process in the March Guidance is unlawful." (citation omitted)); *Escobar v. Chestnut*, No. 1:25-cv-01801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional." (citing cases)).

When balancing all three *Mathews* factors, due process requires that Petitioner be afforded IJ review of any negative fear determination before Respondents may remove him to Mexico, consistent with the regulations governing analogous contexts. *See* 8 C.F.R. §§ 208.31, 1208.31. Accordingly, the undersigned **RECOMMENDS** that Count II of the Petition be **GRANTED**.

**C. Petitioner's Continued Detention is Unlawful Under 8 U.S.C. § 1231.**

Count I of the Amended Petition alleges that Respondents violated Petitioner's substantive due process rights under *Zadvydas* by continuing to detain him despite there being no significant likelihood of his removal in the reasonably foreseeable future. ECF No. 13 at 23.

*1. Petitioner Has Not Been Detained Beyond the Presumptively Reasonable Period of Detention.*

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). *Zadvydas*, 533 U.S. at 683. The Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months.

*Id.* After that six-month period has elapsed, if the alien demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

Respondents correctly note that Petitioner remains within the presumptively reasonable six-month detention period recognized in *Zadvydas*. *See* ECF No. 12 at 10–12. Petitioner was detained on June 12, 2026; the original petition challenging his detention was filed less than one month later on July 8, 2026; and the Amended Petition was filed shortly thereafter on August 6, 2026. *See* ECF Nos. 1, 13. Thus, Petitioner's current period of post-final-order detention has lasted approximately three months, well within the six-month period contemplated under *Zadvydas*.

Petitioner argues that he has been detained for approximately six months based on his original detention in 2018 for approximately three months and his current detention for approximately three months. ECF No. 15 at 7. However, courts within this district have generally held that the six-month period is measured from the most recent detention or re-detention, rather than by aggregating prior periods of custody. *See, e.g.*, *Lee v. Crawford*, No. 2:25-CV-535, 2026 WL 745263, at *3 (E.D. Va. Feb. 27, 2026), *report and recommendation adopted*, No. 2:25-CV-535, 2026 WL 738591 (E.D. Va. Mar. 16, 2026) ("The weight of authority holds that when an alien is re-detained pursuant to a final order of removal, the six-month presumptively reasonable period runs from the date of the most recent detention, not from any prior period of custody."); *Shaikh v. Lyons*, No. 1:25-CV-811, Dkt. No. 12 at 6 (E.D. Va. June 23, 2025) ("Seeking to avoid

this conclusion, Petitioner asserts that, for purposes of the *Zadvydas* analysis, his current period of detention should be combined with prior periods of detention; this is incorrect."). Accordingly, Petitioner's approximately three-month detention in 2018 does not count toward the six-month period applicable to his current detention.

However, that presumption does not categorically bar judicial review before six months have elapsed. Rather, courts have recognized that a petitioner may rebut the presumption by demonstrating that removal is not reasonably foreseeable. *See Cruz Medina*, 794 F. Supp. 3d at 375 ("During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' . . . But if a petitioner 'claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable'—including during the six-month period—the petitioner 'can overcome that presumption' and detention is no longer authorized." (citation omitted)); *Serpas*, 2026 WL 1244544, at *4 ("As other courts in this Circuit have recognized, the Supreme Court in *Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable"). The Court therefore proceeds to consider whether Petitioner has shown that his removal is not reasonably foreseeable.

*2. There is No Significant Likelihood of Petitioner's Removal in the Reasonably Foreseeable Future.*

If Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents must come forward with evidence sufficient to rebut that showing. *Zadvydas*, 533 U.S. at 701. Respondents contend that Petitioner's removal from the United States is reasonably foreseeable because "ICE is ready to present Petitioner at a staging facility to see whether Mexico is willing to accept Petitioner." ECF No. 12 at 13. Respondents also "concede they do not know whether Mexico will accept Petitioner," but

that nonetheless, Petitioner has put forth no evidence demonstrating that Mexico would *not* accept him. *Id.* Petitioner disputes this, arguing that there is no certainty in his immediate removal to Mexico and that ICE's "mere desire" for Mexico to accept Petitioner for removal is insufficient to rebut Petitioner's showing. ECF No. 15 at 9. Petitioner also argues that his entitlement to IJ as a matter of due process further undermines the likelihood of his removal in the reasonably foreseeable future. *Id.*

Here, Petitioner has met his initial burden of showing that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner points to several circumstances supporting that conclusion. First, ICE previously detained Petitioner for approximately three months in 2018 while attempting to remove him to a third country—including through requests to Mexico, Guatemala, and Honduras—but was unable to effectuate his removal and ultimately released him on an OSUP. ECF No. 13 at ¶ 15. Second, Petitioner represents that he does not consent to removal to Mexico given his fear of persecution or torture, and that "Mexico will not accept a third-country national who does not consent to be removed there." ECF No. 15 at 8–9 (citing cases). Third, Petitioner has not received the IJ review that, as discussed *supra*, due process requires before he may lawfully be removed to Mexico. Thus, even assuming Respondents can secure Mexico's acceptance, there is an additional procedural step that must occur before Petitioner can be removed. Taken together, Petitioner has sufficiently carried his burden of showing that there is no significant likelihood of his removal in the reasonably foreseeable future.

Furthermore, Respondents fail to rebut Petitioner's showing because they cannot show that any country is presently willing to accept Petitioner for removal. Respondents have identified no basis for concluding that Mexico will accept Petitioner, conceding that they do not know whether Mexico will do so. *See* ECF No. 12 at 13 ("And while Federal Respondents concede they do not

know whether Mexico will accept Petitioner, Petitioner has provided no evidence that Mexico would not accept him."). Instead, Respondents appear to rely on their ability and intention to present Petitioner to Mexico to determine whether Mexico will accept him, which is, at most, a possibility of removal rather than a significant likelihood of removal in the reasonably foreseeable future.

Respondents also fail to rebut Petitioner's showing because they may not remove Petitioner to Mexico unless and until he receives the procedural protections required by due process, including review of his negative fear determination by an IJ. As previously discussed, due process requires that Petitioner receive IJ review of his negative fear determination before Respondents may remove him to Mexico. *See supra* Part II.B. Until those procedures occur, Petitioner's removal occurring within any definite period of time is unlikely, and his removal therefore cannot be considered reasonably foreseeable. *See, e.g.*, *Rojas Toj v. Mullin*, No. 1:26-CV-1142, 2026 WL 1458900, at *3 (E.D. Va. May 21, 2026) ("Although Petitioner has had an interview with an asylum officer regarding his fear of removal to Mexico, he is entitled to review of his removal before an IJ before any such removal could occur. . . . Under these circumstances, Petitioner's removal within any finite period of time is exceedingly unlikely." (citation omitted)); *Portela-Hernandez v. Trump*, No. 25-1633, 2026 WL 74042, at *14 (D. Md. Jan. 9, 2026) ("Without immigration judge review of the negative fear finding, the Government has not afforded [petitioner] all the process he is constitutionally due. . . . Respondents cannot overcome *Zadvydas*'s due process requirements by skipping other procedures that are constitutionally due."); *Nolasco Renderos v. Baker*, 814 F. Supp. 3d 598, 607 (D. Md. 2026) ("[Petitioner] is entitled to the protections of 8 C.F.R. § 208.31, and yet the government has not yet initiated these procedures. . .

. Respondents have refused to follow the procedures required by the governing regulations, and it is that refusal that is the source of delay in the adjudication of Petitioner's claim.").

Petitioner has sufficiently demonstrated that his removal is not reasonably foreseeable until Respondents provide the procedural protections required by due process. Accordingly, the undersigned **RECOMMENDS** that Count I of the Petition be **GRANTED** to the extent Petitioner seeks release from detention pending completion of constitutionally adequate removal proceedings.

**D. Respondent's Revocation of Petitioner's OSUP Was Unlawful.**

Count III of the Amended Petition alleges that Respondents violated 8 C.F.R. §§ 241.13(i)(3) and 241.4(l) and the *Accardi* doctrine[3] when revoking Petitioner's OSUP because they failed to follow the required procedures governing revocation and post-revocation review. ECF No. 13 at 25. Specifically, Petitioner contends that Respondents failed to provide Petitioner with an informal interview in violation of § 241.4, and that the Notice of Revocation of Release did not demonstrate changed circumstances warranting revocation under § 241.13 because it only provided conclusory statements regarding the likelihood of Petitioner's removal. ECF No. 15 at 4. Petitioner also contends that Respondents' "post-deprivation efforts" to cure these deficiencies by serving Petitioner the Notice of Revocation on August 4, 2026, cannot remedy their failure to provide required pre-deprivation procedures. *Id.* at 6. Finally, Petitioner contends that, even if he in fact received an informal interview, Respondents still violated § 241.4 by failing to obtain

---

[3] The *Accardi* doctrine is an administrative law principle that requires an agency to follow its own procedures, rules, and regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (setting aside a deportation order where BIA failed to follow its procedures for deportation proceedings); *see Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid."); *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999) ("We have recognized that an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination.").

authorization to revoke Petitioner's OSUP from the only higher-level ICE official authorized to make that decision. *Id.* at 4–5.

Respondents argue that Petitioner's OSUP was properly revoked under § 241.13 because ICE determined that changed circumstances made his removal reasonably foreseeable, no particular individual needed to execute the Notice of Revocation of Release pursuant to the regulation, and Petitioner was given both his Notice of Revocation of Release and informal interview. *See* ECF No. 12 at 8–10. Respondents additionally "concede[]" that ICE could not confirm whether Petitioner was properly served his Notice of Revocation on June 12, 2026, but that he still received an informal interview that day and was later served his Notice of Revocation on August 4, 2026. *Id.* at 9–10.

Because the parties dispute whether § 241.4 or § 241.13 governs the revocation of Petitioner's release, the Court addresses that threshold issue first. Section 241.13 governs the release and supervision of an alien subject to a final order of removal who has established "good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Furthermore, § 241.13(b)(1) provides that § 241.4 "shall continue to govern the detention of aliens under a final order of removal . . . unless [DHS] makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* § 241.13(b)(1).

"The procedures required to revoke each of these forms of release are different." *Phommachak v. Wesling*, 816 F. Supp. 3d 201, 208 (D. Mass. 2026). An OSUP that was issued under § 241.4 may be revoked by the Executive Associate Commissioner or, where "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner," by a district director if (1) "[t]he purposes of release have

been served;" (2) "[t]he alien violates any condition of release;" (3) "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or" (4) "[t]he conduct of the alien, or any other circumstance indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). By contrast, an OSUP issued under § 241.13 may only be revoked "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Section 241.13 also provides for certain revocation procedures that DHS must follow, including notifying the alien "of the reasons for revocation" and conducting "an initial informal interview promptly after [the alien's] return to [DHS] custody to afford the alien an opportunity to respond to the reasons for revocation[.]" *Id.* § 241.13(i)(3).

Here, Respondents assert that Petitioner's OSUP was revoked under § 241.13 on account of changed circumstances making his removal reasonably foreseeable. *See* ECF No. 12 at 8–10. Although Petitioner's "Alien Informal Interview" form apparently lists both § 241.4(l) and § 241.13(i) as the authorities for Petitioner's revocation,[4] Petitioner's Notice of Revocation states that Petitioner's release was revoked "pursuant to 8 C.F.R. § 241.13(i)," due to changed circumstances. ECF No. 12, attach. 8 at 1. The reason for revocation provided that "[o]n 10/25/2018, you were ordered removed to El Salvador, but you were granted withholding of removal to El Salvador. Your case is under review for removal to an alternate country." *Id.* at 2. This language is consistent with the requirements of § 241.13, which provides that an OSUP issued under § 241.13 may only be revoked "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

[4] The title of the form reads, "Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)." ECF No. 12, attach. 5.

It therefore appears that Petitioner's OSUP was issued and revoked pursuant to § 241.13, rather than § 241.4. Although the "Alien Informal Interview" form references both regulations, Respondents represent that Petitioner's release was revoked because changed circumstances made his removal reasonably foreseeable, and the Notice of Revocation likewise identifies § 241.13(i) as the authority for revocation. There is also nothing in the record to indicate that Petitioner's OSUP was revoked pursuant to one of the four circumstances enumerated in § 241.4(l)(2). Accordingly, the Court evaluates Petitioner's revocation under § 241.13. Petitioner's argument that Respondents failed to obtain the authorization required by § 241.4(l)(2) therefore does not provide an independent basis for relief. *See* ECF No. 15 at 4–5.

Applying § 241.13(i)(2), however, Respondents did not properly revoke Petitioner's OSUP. DHS may revoke an OSUP issued under that provision only "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The Notice of Revocation identifies as the changed circumstance that Petitioner's case was "under review for removal to an alternate country." ECF No. 12, attach. 8 at 2. Respondents have elsewhere identified Mexico as the alternate country, but the Notice itself does not identify Mexico as that alternate country or otherwise describe why the review resulted in a significant likelihood that Petitioner could be removed in the reasonably foreseeable future.

Furthermore, there is nothing that demonstrates Petitioner's removal to Mexico is reasonably foreseeable beyond Respondents' statement that "ICE is ready to present Petitioner at a staging facility to see whether Mexico is willing to accept Petitioner. Indeed, this Court's Order is preventing ICE from effectuating Petitioner's removal. And while Federal Respondents concede they do not know whether Mexico will accept Petitioner, Petitioner has provided no evidence that

Mexico would not accept him." *See* ECF No. 12 at 13. Respondents do not claim that Mexico is ready and willing to accept Petitioner, but rather that ICE is ready to present Petitioner at a staging facility "***to see whether Mexico is willing to accept Petitioner***." *Id.* (emphasis added). Respondents' showing is "plainly inadequate to establish a changed circumstance, let alone one that suggests removal has become significantly likely in the reasonably foreseeable future." *See Garcia-Rivera v. Noem*, No. 1:26-CV-229, 2026 WL 1244545, at *3 (E.D. Va. Mar. 2, 2026); *id.* ("Now, Federal Respondents state that 'ICE has made progress in removing Petitioner to a third country [Mexico],' but the record before the Court indicates that this progress consists of only a deportation officer stating that 'ICE is ready to move forward with removal' and that it 'would send Petitioner to a staging facility to effectuate Petitioner's removal to Mexico.' There is nothing else, not even the suggestion that ICE has simply attempted to secure travel documents or Mexico's authorization for Petitioner's removal to Mexico." (citation omitted)).

Beyond Respondents not carrying their burden of establishing changed circumstances under § 241.13(i)(2), § 241.13(i)(3) separately requires DHS to provide Petitioner with notice of "the reasons for revocation" and to conduct "an initial informal interview promptly after [his] return to [DHS] custody[.]" *See* 8 C.F.R. § 241.13(i)(3). Here, the parties dispute whether Petitioner was provided the required informal interview on June 12, 2026: Respondents claim that Petitioner received an informal interview that day, while Petitioner disputes that he ever received one. *See* ECF No. 12 at 9–10; ECF No. 15 at 4. However, the Court needs not resolve this dispute based on its recommended finding that Respondents failed to establish the changed circumstances required by § 241.13(i)(2) when revoking Petitioner's OSUP.

Because Respondents failed to establish changed circumstances, Respondents' revocation of Petitioner's OSUP and re-detention violated the procedures required by § 241.13 and, under

*Accardi*, violated Petitioner's right to due process. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144 (D. Mass. 2025) ("Taken together, ICE's individualized determination to re-detain [the petitioner] is not in compliance with 8 C.F.R. § 241.13(f), (i)(2). And ICE, like any agency, has the duty to follow its own federal regulations. . . . As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." (citation omitted) (internal quotation omitted)).

Accordingly, the undersigned **RECOMMENDS** that Count III of the Amended Petition be **GRANTED** to the extent it alleges a violation of 8 C.F.R. § 241.13.

**E. Petitioner's Substantive Due Process Challenge to the Revocation of His Release and Detention.**

Count IV of the Amended Petition alleges that Respondents violated the Fifth Amendment by re-detaining Petitioner without providing adequate notice or conducting an individualized determination concerning his flight risk, dangerousness, and the imminence of his removal to a third country. ECF No. 13 at 25. Petitioner argues that, absent such notice and individualized assessment, his re-detention violated his due process rights and therefore requires his immediate release. In response, Respondents contend that Petitioner's "*substantive* due process challenge to his OSUP revocation is essentially identical to [his] substantive detention challenge," that is, Petitioner's claim regarding the lawfulness of his detention under *Zadvydas*. ECF No. 14 at 4.

The Court construes Count IV as asserting a substantive due process challenge to Petitioner's current detention. This claim appears to overlap with Petitioner's broader substantive challenge to the legality of his continued detention, and Petitioner does not identify a distinct basis for relief outside of the Fifth Amendment's Due Process Clause. Because the Court has determined that Petitioner's continued detention violates his substantive due process rights under *Zadvydas* and recommends his immediate release on that basis, *see supra* Section II.C, Petitioner has already

obtained the substantive relief that is available to him. Accordingly, to the extent Count IV challenges the lawfulness of Petitioner's current detention, the undersigned **RECOMMENDS** that Count IV of the Amended Petition be **GRANTED**, consistent with the relief recommended *supra* Section II.C.

### F. Petitioner's Motions to Appoint Counsel and for the Issuance of a No-Transfer Order Are Moot.

In addition to habeas relief, Petitioner seeks the appointment of counsel based on financial need and limited legal expertise, as well as the issuance of an order barring Petitioner's transfer from his current place of detention during the pendency of this action. *See* ECF No. 2 at 1; ECF No. 3 at 1. Since filing these motions, however, Petitioner has secured counsel to represent him in these proceedings and the Court has entered an order barring Petitioner's removal or transfer from this District without this Court's permission during the pendency of this action. *See* ECF Nos. 6, 7, 10. Because the relief requested has been granted, the undersigned **RECOMMENDS** that Petitioner's Motions, ECF Nos. 2–3, be **DENIED** and **DISMISSED AS MOOT**.

## III. RECOMMENDATIONS

For the reasons explained above, the undersigned **RECOMMENDS** that the Amended Petition, ECF No. 13, be **GRANTED**. The undersigned further **RECOMMENDS** that the Motions to Appoint Counsel and for the issuance of a No-Transfer Order, ECF Nos. 2–3, be **DENIED** and **DISMISSED AS MOOT**.

The undersigned further **RECOMMENDS** that Petitioner be **RELEASED** from custody immediately, and that Petitioner's Order of Supervision be **RESTORED** immediately, not to be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.13. It is further **RECOMMENDED** that Respondents be **ENJOINED** from re-detaining Petitioner except upon a

showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 25, 2026